Arnold R. Hanson and Another, Individually and as Copartners, Trading under the Firm Name and Style of Hanson & Hanson, Respondents, *v.* National Surety Company, Appellant.

First Department, December 5, 1930.

*David Rumsey* of counsel [*Henry Newton Arnold* with him on the brief; *Rumsey & Morgan*, attorneys], for the appellant.

*George C. Levin* of counsel [*Krause & Hirsch*, attorneys], for the respondents.

Finch, J. The defendant appeals from an order denying a motion to dismiss the complaint upon the ground that according to the allegations the defendant is not liable upon the bond upon which the action is based. The cause of action arises upon a bond issued by the defendant surety company, and more particularly upon paragraph C thereof, whereby the defendant undertook to indemnify the plaintiffs for any loss not exceeding $50,000 of money or securities: " Through larceny, whether common law or statutory, embezzlement, robbery, holdup or theft by any person whomso-

ever, while the property is in transit within the United States or in transit without the United States but within twenty (20) miles of any of the offices covered hereunder, and in either case in the custody of any of the Insured's partners or any of the employees or any messenger temporarily employed, or through negligence on the part of any such employee or messenger having custody of the property while in transit as aforesaid, such transit risk to begin immediately upon receipt of such property by the transporting employee or employees or partner or messenger temporarily employed and to end immediately upon delivery thereof at destination." The facts which plaintiffs claim render the defendant liable under the aforesaid provision of the bond are as follows:

Plaintiffs received an order for certain securities of the value of $19,300. They gave to one of their employees the securities so ordered for delivery to the purchaser at its place of business, which was located within twenty miles of the office of the insured. Plaintiffs' employee delivered the securities to the purchaser, at its place of business, taking back a written receipt which reserved title to the securities in the plaintiffs until payment by certified check shall have been made therefor, and then the complaint alleges, upon the express understanding and agreement by and between the plaintiffs and Baran & Co., Inc. (the purchaser) and pursuant to a certain custom of trade existing in the stock brokerage business and stock security market, that no delivery and transfer would be made of the said property until and unless a certified check or cash in the amount of $19,300 was delivered to plaintiffs' employee, and that thereafter, pursuant to the said custom of trade, existing in such transactions, of which custom the defendant, in executing the bond aforesaid at all times had knowledge, and pursuant to agreement of the plaintiffs and Baran & Co., Inc., and the said custom, the plaintiffs' employee returned to the premises of Baran & Co., Inc., within a short time after the surrender of possession of the property aforesaid, to " pick up " a certified check or cash in the amount above indicated, to complete the transfer and delivery of the property aforesaid; that upon return, plaintiffs' employee found the premises of Baran & Co., Inc., abandoned and deserted and that the property aforesaid had been removed and concealed, and the officers and representatives of Baran & Co., Inc., had absconded and disappeared.

From the foregoing it appears that there was a deliberate surrender of possession of the securities at their point of destination. Accordingly, under the express terms of the bond, the risk of the defendant was at an end. It is urged by the plaintiffs that until the receipt of payment for the securities there had been no delivery and that the securities should be deemed in transit until there had

in fact been such payment. In support of this contention plaintiffs rely upon the case of *Underwood* v. *Globe Indemnity Co.* (245 N. Y. 111). In that case a messenger was to deliver certain securities in return for a certified check. The securities were obtained from him by means of a paper device which purported to be a certified check but was not. The court there held the surety company liable inasmuch as the goods had been taken from the possession of the messenger by trick and device while they were still in transit from the broker to the customer. The distinctions between that case and the case at bar are obvious. In the *Underwood* case the transit was to end by the surrender of possession, the transfer of title and the payment, all of which were to be simultaneous. Delivery was obtained by the trick and device of giving the messenger a bogus certified check. In the case at bar the transit was ended, the delivery made, and possession surrendered in strict accordance with the instructions of the plaintiffs. The theft subsequently occurred.

In the case at bar, moreover, there is present in the bond a term which was lacking in the bond involved in the *Underwood* case. Here the bond expressly limits and defines what shall constitute transit, namely, the physical transportation of the securities between the receipt thereof and delivery at destination, " Such transit risk to begin immediately upon receipt of such property by the transporting employee or employees or partner or messenger temporarily employed and to end immediately upon delivery thereof at destination."

Plaintiffs urge that the word " delivery," as used in the bond, may be changed from its ordinary meaning and be given the technical meaning of passing of title only upon receipt of a certified check. So to do would result in straining the meaning of this word out of all proportion to the ordinary natural meaning of the word and contradict instead of harmonizing with the context. No such construction can be indulged in for the purpose of creating a liability upon the defendant where otherwise no such liability exists.

We hold, therefore, that under the allegations of the complaint in the case at bar, the defendant is not liable under the bond for the loss of the securities.

It follows that the order appealed from should be reversed, with ten dollars costs and disbursements, and the complaint dismissed, with ten dollars costs.

DOWLING, P. J., McAVOY and SHERMAN, JJ., concur; MERRELL, J., dissents and votes to affirm.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.